WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Henrietta Mine LLC,<br><br>        Plaintiff,<br><br>v.<br><br>A.M. King Industries Incorporated,<br><br>        Defendant. | No. CV-20-01106-PHX-SMB<br><br>**ORDER** |

Pending before the Court is Defendant A.M. King Industries Incorporated's ("King") Motion to Dismiss. (Doc. 18.) Plaintiff Henrietta Mine LLC ("Henrietta") has filed a response, (Doc. 21), and King has filed its reply. (Doc. 22.) King's Motion seeks dismissal of the case "pursuant to Federal Rule of Civil Procedure 12(b)(1)-(3) and (6)."[1] (Doc. 18 at 1.) While not indicated in the motion's caption, King also seeks, in the alternative, an order transferring the case to the Eastern District of California under 28 U.S.C. § 1404(a). (Doc. 18 at 16.) Pursuant to LRCiv. 7.2(f), the Court elects to rule without oral argument.

**I.**   **Factual Background**

This dispute concerns an alleged agreement between King and Henrietta regarding the sale of certain mining equipment currently located in British Columbia. Henrietta is an

---

[1] While the motion states that it seeks dismissal pursuant to Rule 12(b)(1)-(3) and (6), Defendant does not actually make any argument for dismissal based on improper venue under rule 12(b)(3) nor any argument for dismissal based on Plaintiff's failure to state a claim under Rule 12(b)(6).

Arizona LLC with its principle operations in Arizona. King is a Nevada corporation with its principle place of business in California. Henrietta's complaint alleges the parties' business relationship began on or around September 5, 2019. The complaint further alleges that from September 2019, until April 2020, King sent various communications to Henrietta in Arizona concerning King's ability to assist Henrietta with the acquisition of certain mining equipment for use at Henrietta's mining operations in Arizona. (Doc. 1-1 at 3.) These communications included solicitations by King for Henrietta to purchase equipment located in Australia and to purchase other mills located in Arizona. (*Id*.) While Henrietta declined to pursue most of these opportunities, it did express interest in King's offer to assist it with the purchase of a "ball mill, rod mill, and regrind mill" located in British Columbia, Canada ( "the BC Equipment"). (*Id*.)

The complaint further alleges that "King was aware that Henrietta is based in Arizona and planned to transport [the BC equipment] to…Arizona." (*Id*.) Henrietta alleges King undertook to communicate and negotiate with Henrietta personnel in Arizona regarding the purchase disassembly and removal of the BC equipment for use at Henrietta's operations. (*Id*.) Henrietta alleges King arranged for its personnel to travel and view the BC equipment, sent documentation concerning the BC equipment to Henrietta's Arizona personnel including installation instructions, plans, and equipment specifications, and otherwise made numerous communications regarding the purchase of the BC equipment. (*Id*.)

The parties' negotiations came to fruition during December of 2019. (*Id*. at 5.) Henrietta's complaint alleges on December 9, 2019, King sent Henrietta an invoice "to get things moving forward." (*Id*.) The invoice listed the BC equipment in some detail and gave a total price of $500,000. (*Id*. at 6.) Henrietta alleges that under the terms of the invoice it was to be given "title and possession" of the BC equipment upon wiring the purchase price to King. (*Id*.) Henrietta alleges that it wired the purchase price to King but was subsequently informed that the Canadian mining company where the equipment was located would not allow Henrietta to remove the equipment unless certain additional

conditions were met. Henrietta was informed it must agree to cover the cost of additional safety and regulatory requirements as well as the cost of fabricating certain structural reinforcements to replace the BC mills being removed prior to moving the BC equipment. (*Id.*; Doc. 18 at 4.)

Henrietta alleges the additional requirements impose additional costs of $250,000 upon it as a prerequisite to obtaining the equipment. Henriette further alleges the additional requirements were not included in the invoice sent by King, the additional requirements were unforeseeable, and that because delivery of the BC equipment was conditioned upon Henrietta's compliance with additional conditions, King failed to tender delivery in accordance with the contract terms. (Doc. 1-1 at 6.) After informing King of its alleged failure, on April 6, 2020, Henrietta demanded the return of its $500,000 purchase price. (*Id.*) King refused. (*Id.*)

On May 11, 2020, Henrietta filed suit against King in Arizona Superior Court for Maricopa County. (Doc. 1-1.) Henrietta's complaint sought declaratory relief that King had breached its contractual obligations bringing claims for breach of contract and unjust enrichment based on King's refusal to return the purchase money. (*Id.*) On June 4, 2020, King removed the case to this Court under 28 U.S.C. § 1446(b)(1). (Doc. 1.) King has since answered the complaint and filed this motion. (Doc. 18.)

## II.   Legal Analysis

### A. Waiver

As a preliminary matter, the Court will address Plaintiff's argument that certain defenses have been waived by the Defendant. Plaintiff alleges that King's argument based on a lack of personal jurisdiction has been waived by King's active participation in the case. Plaintiff also argues King's argument for transfer to California was waived by King's failure to raise the argument in a timely manner. Under Federal Rule of Civil Procedure 12(h), "[a] party waives any defense listed in Rule 12(b)(2)–(5) by…failing to…include it in a responsive pleading…" *See also American Ass'n of Naturopathic Physicians v. Hayhurst,* 227 F.3d 1104, 1106 (9th Cir. 2000) ("certain defenses…must be raised at the

first available opportunity or, if they are not, they are forever waived."); *Liberty Life Ins. Co. v. Myers*, No. CV 10-2024-PHX-JAT, 2011 U.S. Dist. LEXIS 39334 (D. Ariz. Apr. 11, 2011). Thus "[d]efects in personal jurisdiction, venue, or service of process are waived unless asserted in a party's initial pleading." *Hill v. Blind Indus. & Servs.*, 179 F.3d 754, 757 (1999) (citing Fed. R. Civ. P. 12(h)(1)).

Even if a party properly and timely raises such defenses, the defenses can still be waived by the party's subsequent conduct. *Peterson v. Highland Music*, 140 F.3d 1313, 1318 (9th Cir. 1998) (citing *Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1296-97 (7th Cir. 1993); *Yeldell v. Tutt*, 913 F.2d 533, 538-39 (8th Cir. 1990)). However, the Ninth Circuit has indicated where the defense was properly raised, waiver should not be found "[i]n the absence of other factors militating in favor of a finding of waiver." *Peterson*, 140 F.3d at 1318-19 (noting the purpose of "waiver by conduct" is to prevent a party from "sandbagging" by raising the defense without vigorously pursuing it "in the hopes of receiving a favorable disposition…and then raising [it] on appeal only if he were unhappy with the district court's ultimate decision."); *see also R. Prasad Indus. v. Flat Irons Envtl. Sols. Corp.*, No. CV-12-08261-PCT-JAT, 2017 U.S. Dist. LEXIS 164541, at *5-6 (D. Ariz. Oct. 4, 2017) (finding a defense asserted in defendant's answer to be waived when defendants vigorously litigated the case for multiple years "through dozens of motions and pleadings" before asserting it again.)

Notably, waiver of defenses under Rule 12(h) applies to the defense of "improper venue" under Rule 12(b)(3) but does not apply to a motion to transfer venue under 28 U.S.C. 1404(a). *See*, *e.g.*, *Rui Chen v. Premier Fin. All., Inc.*, No. 18-CV-3771 YGR, 2019 U.S. Dist. LEXIS 219257, at *4 n.2 (N.D. Cal. Dec. 19, 2019) ("[A] motion to transfer…under section 1404(a) 'technically can be made at any time. i.e., there is no risk of waiver by delay as there is with improper venue.'" (quoting *Turnage v. Old Dominion Freight Line, Inc.*, No. C 13-1409-PJH, 2013 U.S. Dist. LEXIS 84277, 2013 WL 2950836, at *6 (N.D. Cal. June 14, 2013)); *Weber v. Saladworks, LLC*, No. SA CV 13-01049-MWF (PJWx), 2014 U.S. Dist. LEXIS 195654, at *3 (C.D. Cal. Jan. 27, 2014) (finding waiver

inapplicable "because the Motion does not raise a 12(b)(3) defense.").

King's conduct has not waived its jurisdictional defense. In the present action, King raised the issue of personal jurisdiction when it first answered Plaintiff's complaint on June 11, 2020, less than three months prior to bringing this motion. (Doc. 7 at 13.) While Defendant has engaged in the preliminary proceedings of this case since raising the argument, such conduct is perfectly allowable. It has long been the case that a defendant need not risk a judgement on the merits in order to preserve their jurisdictional defense. *See*, *e.g.*, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 n.10 (1980) (citing *Kulko v. Superior Court of Cal.*, 436 U.S. 84, 90 n.5 (1978)). There do not appear to be any factors militating in favor of waiver in this case. Defendant does not appear to be "sandbagging" the litigation or attempting to gain two bites at the apple. King has not let its jurisdictional defense gather dust in the background only to be suddenly reasserted after the orders or rulings of the case turn against it.

Henrietta's caselaw to the contrary is unpersuasive. Plaintiff cites *R. Prasad Indus.* for the proposition that King's behavior merits waiver. However, the Court in *R. Prasad Indus.* found waiver in the context of vigorous multi-year litigation where the defendant filed "dozens of motions and pleadings" without reasserting its jurisdictional defense. *Id.* at 5-6. This is a far cry from the present case's mere three-month lifespan in which King has filed no other substantive motion with the Court since first asserting his defense. Similarly, Plaintiff's cite to *New Net Inc. v. Lavasoft*, 356 F. Supp. 2d 1071, 1074 (C.D. Cal. 2003), is inapposite to the present circumstances. In *New Net*, the court affirmatively ordered the defendant to brief their jurisdictional argument prior to addressing the merits, and the defendant declined to do so. King has received no such mandate in this case, nor has King affirmatively declined any prior opportunity in which it could have briefed its jurisdictional issue. As such King has not waived its jurisdictional argument by its conduct.

King has also not waived its argument to transfer venue under 1404(a) but has waived any argument based on improper venue. Unlike the defense of improper venue under Rule 12(b)(3), a motion to transfer venue under 1404(a) cannot be waived under

Rule 12(h). King's motion makes it clear that it seeks transfer based on 1404(a) rather than under Rule 12(b)(3). (Doc. 18 at 16). As such, Henrietta's contention that King's transfer is barred as untimely must fail.[2]

### B. The "Local Action" Doctrine

King argues this Court lacks subject matter jurisdiction based on the "local action" doctrine. Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a claim for lack of subject-matter jurisdiction. "Federal courts are courts of limited jurisdiction" and may only hear cases as authorized by the Constitution or Congress. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A court has subject-matter jurisdiction over claims that "aris[e] under the Constitution, laws, or treaties of the United States" and over "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between" diverse parties. 28 U.S.C. §§ 1331, 1332. Because our jurisdiction is limited, it is to be presumed that a cause lies outside of it, and the burden of establishing jurisdiction is on the party asserting it. *Kokkonen*, 511 U.S. at 377.

The Ninth Circuit has confirmed the "local action" doctrine is a constraint on the subject matter jurisdiction of the federal courts. *Eldee-K Rental Props., Ltd. Liab. Co. v. DIRECTV, Inc.*, 748 F.3d 943, 947-48 (9th Cir. 2014). The local action doctrine holds that certain suits "directly operating on real estate or personal actions closely connected with real property" are so connected to real property that such actions must be brought where the real property is located. *Eldee-K*, 748 F.3d at 946; *see also Casey v. Adams*, 102 U.S. 66, 67-68, 26 L. Ed. 52 (1880) (noting local actions must be brought "where the thing on which they are founded is situated.") *United States v. Byrne*, 291 F.3d 1056, 1060 (9th Cir. 2002) (holding that the court's jurisdiction was "properly exercised in the state where the land is situated" because the action was local). However, "The Supreme Court…applie[s]

---

[2] Henrietta's confusion is understandable given that King's motion also asserts "the only proper place for jurisdiction over King is in…California." (*Id*.) To the extent that King intends this statement to be an assertion that venue in Arizona is improper, Henrietta is correct that the argument has been waived under Federal Rule of Civil Procedure 12(h).

- 6 -

this doctrine narrowly," and only to actions that are "local" in character as opposed to "transitory." *Eldee-K*, 748 F.3d 947. Transitory actions are cases which "might have taken place anywhere," and generally encompass causes of action and requests for relief that are personal in nature rather than tied to land. *Eldee-K*, 748 F.3d at 747 (quoting *Livingston v. Jefferson*, 15 F. Cas. 660, 664-65 (1811)); *see also Stone v. United States*, 167 U.S. 178, 183 (1897); *Ellenwood v. Marietta Chair Co.*, 158 U.S. 105, 108 (1895). The Court "look[s] to state law…for a determination of which types of actions are…local in nature" and which are transitory, but the jurisdictional limitation imposed on local actions is a matter of federal law. *Eldee-K*, 748 F.3d at 951 (noting that the court should look to California law to determine which causes of action were treated as local actions but that "state law does not control the effect…on our jurisdiction.").

King argues that, essentially, this is a case about Henrietta's "loss of use of fixtures," and for King's alleged "failure to deliver title and right of possession" of the BC equipment. (Doc. 18 at 7.) King alleges that because the case deals with fixtures, it directly operates on real estate; as such, it is local in nature. (*Id.*) In support of this contention, King cites to A.R.S. § 47-2107(A) in conjunction with UCC § 2-107 Comment 1. Together King argues these provisions indicate that agreements in which the buyer must sever goods from land are considered contracts effecting land, at least for the purposes of the statute of frauds.[3]

---

[3] A.R.S. § 47-2107(A) deals with the sale of good to be severed from realty and states in pertinent part that:

> A contract for the sale of minerals or the like (including oil and gas) or a structure or its materials to be removed from realty is a contract for the sale of goods within this chapter *if they are to be severed by the seller* but until severance a purported present sale thereof which is not effective as a transfer of an interest in land is effective only as a contract to sell.

This statutory provision is modeled verbatim off of U.C.C. § 2-107(1). The first comment to U.C.C. § 2-107 states in pertinent part that:

> this subsection applies only if the minerals or structures 'are to be severed by the seller.' If the buyer is to sever, such transactions are considered contracts affecting land and all problems of the Statute of Frauds and of the recording

- 7 -

However, it does not appear that Arizona courts treat King's cited provisions as triggering the "local action" doctrine in all such cases. Arizona courts seem more than willing to allow their courts to adjudicate disputes governing property in foreign jurisdictions when causes of action are based on equity and the judgment is a result of *in personam* jurisdiction. *TWE Retirement Fund Trust v. Ream*, 198 Ariz. 268, 272 (Ct. App. 2000) ("An *in personam* proceeding, brought in equity to determine the rights of individuals, may be filed in any court that has personal jurisdiction…even if the proceeding involves realty located in another state.") Other cases distinguish between actions affecting or adjudicating ownership of property *in rem* through the court's direct authority, and those which affect real estate or fixtures as the ancillary result of an *in personam* judgement. *TWE*, 198 Ariz. at 272; *see also Amparano v. ASARCO, Inc.*, 208 Ariz. 370, 374 (2004) (noting the "'local' rule" is both a rule of convenience, and "prevents more than one court from *acting on title* to real property."). The Arizona courts also take a functional approach to determine what actions are truly local, asking whether the end result of the case is intended to effect interests in land. *See Nielson v. Hicks*, 225 Ariz. 451, 453 (Ct. App. 2010) (noting "'…actions concerning real property' necessarily refers to actions in which real property is the subject matter, or the basis of, the actions, and not merely peripheral[,]" and holding action was not concerning real property because "the relief sought…is personal, sounds in tort, and does not concern real property.").

King attempts to show this action directly affects real estate by alleging that paragraph 54(c) of Henrietta's complaint requests "a declaratory judgement…to deliver title and right of possession." However, King's allegation blatantly misconstrues the language of complaint. The relevant paragraph does not in fact seek a judgement delivering Henrietta "title and right of possession," nor does any request for relief ask this Court to

---

of land rights apply to them. Therefore, the Statute of Frauds section of this Article does not apply to such contracts though they must conform to the Statute of Frauds affecting the transfer of interests in land.

determine the present title to the land. Instead, the paragraph requests the court declare King *was contractually obligated* to deliver title and possession. (Doc. 1-1 at 7.)

The Court is more persuaded by Henrietta's characterization of the case. Henrietta contends the central issue of this case is not to determine title to the property but one seeking damages for breach of contract. It is Arizona's practice to "look to the allegations of the complaint" and the "nature of the relief sought" to determine whether an action is one tied to real property. *Nielson*, 225 Ariz. at 453. Here, the allegations of the complaint show that Henrietta is not seeking any decree affecting real property, but for money damages. Henrietta did not seek to buy real property in Canada, but it only sought the purchase of equipment it could transport for use in Arizona. Both parties understood the equipment was intended for use in Arizona, and the only reason it remains in Canada is due to King's alleged breach which prevented Henrietta from moving it. The gravamen of Henrietta's damage is thus not the denial of title for an interest in land, but its inability to gain the benefit of its bargain in purchased equipment. The relief sought does not affect real property but seeks only return of Henrietta's purchase price. As such, this is not the type of case that Arizona treats as a "local action."

### C. Personal Jurisdiction

King next alleged that the Court lacks personal jurisdiction over it, but declines to argue their position in detail. Instead King alleges the issue is "obviously not presently ripe for full briefing" because the United States Supreme Court granted cert in *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 140 S. Ct. 917 (2020) on a question of personal jurisdiction but has not yet rendered a ruling. (Doc. 18 at 15.) King has presented no authority to the Court explaining how a pending appeal of similar issues in a different case effects the ripeness of a dispute. The Court will instead interpret Defendant's request as a request that the Court stay ruling on the issue pending resolution of the Supreme Court case.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for

itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S.Ct. 163 (1936). Accordingly, "[a] trial court may…enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). The decision whether to stay an action is committed to the "sound discretion" of the district court and is based on weighing "the competing interests which will be affected by the granting or refusal to grant a stay…" *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). Among these competing interests are (1) "the possible damage which may result from the granting of the stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc.*, 398 F.3d at 268). "[T]he proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

The Court declines to delay its ruling on the personal jurisdiction issue. Defendant has made no effort to meet the burden of showing its need for a stay, and the Court is well satisfied that the parties are capable of briefing the issue of personal jurisdiction without hardship. It is also far from clear whether any decision by the Supreme Court would have an effect on this case. The consolidated cases before the Supreme Court are matters involving a tort action based on products liability and not based on breach of contract. The question upon which the Supreme Court granted cert is not clearly analogous to the present case. *See Ford Motor Co.*, 140 S. Ct. 917 (listing the question presented as "[w]hether the 'arise out of or relate to' requirement is met *when none of the defendant's forum contacts caused the plaintiff's claims*, such that the plaintiff's claims would be the same even if the defendant had no forum contacts."). King's contacts with Arizona as alleged by Henrietta do relate to the Plaintiff's claims. While it remains an open question whether those contacts are sufficient to support personal jurisdiction, either way the theory of personal jurisdiction asserted by Henrietta is tied to alleged case-based contracts.

The Court will not stay its decision pending the result of *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 140 S. Ct. 917 (2020), but it will give King a chance to brief the issue more fully now that King's request has been denied. As such King is instructed that it will be permitted, if it so chooses, to submit supplemental briefing on the issue of personal jurisdiction. King's supplemental briefing must be submitted to the Court within five (5) days of the entry of this order. The supplemental briefing is not to exceed four pages. Henrietta may, if it finds it necessary, file a response with the Court within five (5) days after the supplemental briefing is submitted. The response is also not to exceed four pages. If the defendant declines to brief the issue, the court will count the defense waived. *Lavasoft*, 356 F. Supp. 2d, 1074.

### D. *Forum Non Conveniens*

Under the doctrine of *forum non conveniens*, "[a] district court has discretion to decline to exercise jurisdiction in a case where litigation in a foreign forum would be more convenient for the parties." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947). The purpose of the doctrine is to "root out cases in which the 'open door' of broad jurisdiction and venue laws 'may admit those who seek not simply justice but perhaps justice blended with some harassment,'" particularly in cases where the plaintiff's apparent strategy is to "forc[e] the trial at a most inconvenient place for an adversary." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011) (citing *Gulf*, 330 U.S. at 507; *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 n.15 (1981). The doctrine "is based on the inherent power of the courts to decline jurisdiction in exceptional circumstances." *Carijano*, 943 F.3d at 1224 (quoting *Paper Operations Consultants Int'l, Ltd. v. S.S. Hong Kong Amber*, 513 F.2d 667, 670 (9th Cir. 1975)). *Forum non conveniens* is a "drastic exercise" of the court's power because, unlike a mere transfer, it results in the dismissal of a plaintiff's case. *Carijano*, 943 F.3d at 1224. As such, the Ninth Circuit has called *forum non conveniens* "an exceptional tool to be employed sparingly." *Id.* (citing *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002)). The "plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum." *Lueck v. Sundstrand Corp.*, 236

F.3d 1137, 1143 (9th Cir. 2001) (quoting *Piper Aircraft*, 454 U.S. at 256).

To prevail on a motion to dismiss for *forum non conveniens*, the Defendant bears the burden of demonstrating (1) an adequate alternative forum, and (2) that the balance of private and public interests favor dismissal. *Carijano*, 943 F.3d at 1224 (citing *Dole Food Co.*, 303 F.3d at 1118). The mere fact that a case involves conduct or plaintiffs from overseas is not enough for dismissal. *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1181-82 (9th Cir. 2006) ("Juries routinely address subjects that are totally foreign to them, ranging from the foreign language of patent disputes to cases involving foreign companies, foreign cultures and foreign languages."). Dismissal under *forum non conveniens* is merited only when private and public factors together "strongly favor trial in the foreign country." *Dole Food*, 303 F.3d at 1118; *see also Piper*, 454 U.S. at 241 (finding transfer is merited "when trial in the chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'").

1. *Adequate Alternative Forum*

An alternative forum is deemed adequate if: (1) the defendant is amenable to process there; and (2) the other jurisdiction offers a satisfactory remedy. *Carijano*, 643 F.3d at 1225 (citing *Piper*, 454 U.S. at 254 n.22; *Leetsch v. Freedman*, 260 F.3d 1100, 1103 (9th Cir. 2001)). "'Voluntary submission to service of process' suffices to meet the first requirement for establishing an adequate alternative forum." *Carijano*, 643 F.3d at 1225 (quoting *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1178 (9th Cir. 2006)). The burden is on the defendant to show the alternative forum offers an adequate remedy. *Tuazon*, 433 F.3d at 1178. However, courts will only rarely find a foreign court's remedy lacking. *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1143 (9th Cir. 2001) ("it is only in rare circumstances…where the remedy provided by the alternative forum…is so clearly inadequate or unsatisfactory, that it is no remedy at all[.]" (internal citations omitted)); *see also Tuazon*, 433 F.3d at 1179; *Carijano*, 643 F.3d at 1226-27.

Here, King has met its burden of showing Canada is an adequate alternative forum. King has asserted it will submit to Canadian jurisdiction if the case is sent to Canada, which establishes it is amenable to service of process. King notes generally, though with little support, the contention that Canada follows the common law in contract cases, a position it further evidences by citation to the case of *Hodgkinson v Simms* wherein the Supreme Court of Canada consistently applies the common law to contractual disputes. 3 SCR 377 (S.C.C. 1994). As such the Court is confident that Canadian law could provide an adequate remedy.

### 2. *Private Interests*

The Ninth Circuit has enumerated several sub-factors to guide district courts in their decisions regarding *forum non conveniens*. In examining the "private interests" of the litigants, the Court should consider:

> (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Carijano,* 643 F.3d at 1229 (quoting *Bos. Telecomms. Grp., Inc. v. Wood*, 588 F.3d 1201, 1206-07 (9th Cir. 2009). When looking at the access to evidence and location of witnesses "the focus…should not rest on the number of witnesses . . . in each locale' but rather the court should evaluate the materiality and importance of the anticipated…witnesses' testimony and then determine their accessibility and convenience to the forum." *Carijano,* 643 F.3d at 1231. When looking to whether unwilling witnesses can be compelled to testify, "the initial question is not whether the witnesses are beyond the reach of compulsory process, but *whether it has been alleged or shown that witnesses would be unwilling."* *Id*. (citing *Duha v. Agrium, Inc.*, 448 F.3d 867, 877 (6th Cir. 2006); *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 47 (2d Cir. 1996)) (emphasis added).

    i. *The Residence of the Parties and the Witnesses*

- 13 -

In the present case the balance of private interests counsels against dismissal of the case. The Court notes that both parties to the action are residents of the United States. While King argues "the only common forum" between the parties is Canada because they are citizens of different states, that is an inevitable feature of this Court's diversity jurisdiction, and is not itself a credible reason to invoke the "drastic exercise" of *forum non conveniens*. *Carijano*, 943 F.3d at 1224. Also, while King alleges that witnesses and interested parties reside in Arizona, Texas, California, and Utah, the Court struggles to understand why Canada would be a *more convenient forum* to those witnesses then Arizona. King's motion notes only three specific non-party witnesses that live in Canada which the Court finds insufficient to overcome the common residency of both current parties in the United States as well as the residency of all party witnesses and staff. King generally alleges without any detail that a "host of minor witnesses" will likely reside in British Columbia but declines to list these witnesses for the Court's consideration. In any case, the Court notes that in considering the location of witnesses "the focus…should not rest on the number of witnesses" but on "the materiality and importance of the anticipated [testimony]." *Carijano,* 643 F.3d at 1231. Thus, a general allegation that "minor witnesses" may live in Canada, without greater detail, will not sway the Court's analysis. Additionally, the Court notes that King has not designated these witnesses in their MDIP responses.  In the absence of any more detailed evidence, the Court finds the residency of parties and witnesses favors retention of the case in the United States.

   *ii.* *The Forum's Convenience to the Litigants*

Defendant asserts that "[Arizona] is no more convenient to the Kings than British Columbia." However, Defendant makes this statement without any explanation or evidence as to why a California company finds Canada to be an equally convenient forum. Arizona borders both California and Utah making this venue within a long day's drive (or a short flight) of witnesses present in those states. King further alleges without further argument that "[i]f Endako Mine becomes a party, British Columbia is convenient, Arizona is not." However, the Court notes that Endako Mine is not a party and *forum non conveniens* is not

a tool for weighing the alleged convenience of hypotheticals. As such, the Court finds that the most convenient forum to the actual litigants is in the United States.

### iii. Access to Physical Evidence and Other Sources of Proof

With regards to the physical evidence in this case, the equipment's location in Canada seems to weigh in favor of transfer, though the Court notes evidence is likely found in several localities including Arizona and California. While the location of the machinery is relevant, the Court is not convinced the factor overwhelms other factors given the gravamen of the dispute. This is essentially a dispute over whether the "additional requirements" imposed on Henrietta support a finding that King breached its duty. While some evidence may be required to show the exact scope of the additional requirements, the main dispute of the case seems to be over whether the additional requirements were disclosed in the contract, not over their exact scope. Even with this, the physical evidence located in Canada does not outweigh the other factors of convenience in this case given the location of both parties and the majority of central witnesses. *See Boston Telecomms. Group, Inc. v. Wood*, 588 F.3d 1201, 1208 (9th Cir. 2009) ("'Any court…will necessarily face some difficulty in securing evidence from abroad,' but these complications do not necessarily justify dismissal." (quoting *Tuazon 433 F.3d*, at 1181)).

### iv. Whether Unwilling Witnesses can be Compelled to Testify

King has not satisfied its burden of showing foreign witnesses are unwilling to testify. The initial question for this factor "is not whether the witnesses are beyond the reach of compulsory process, but whether it has been alleged or shown that witnesses would be unwilling to testify." *Carijano*, 643 F.3d at 1231. King, without referencing any substantive support, makes the bare assertion that "[w]itnesses from Centerra Gold will not be testifying voluntarily in Arizona given the inflammatory allegations of plaintiffs…[and] [o]ne doubts Brad Addison can be brought to Arizona from his house in British Columbia." The burden was on King to show there were witnesses unwilling to testify, yet they have offered only two purely speculative sentences on the point. Additionally, as Henrietta points out, Canada allows United States courts to issue letters rogatory to obtain non-party

discovery over foreign entities. *Softwind Capital, LLC v. Glob. Project Sols., LLC*, No. 2:11-cv-02057-JCM-GWF, 2013 U.S. Dist. LEXIS 62999 (D. Nev. May 2, 2013). As such the presence of foreign witnesses in Canada does not itself weight against retention of the case in an Arizona forum.

        v.    *The Cost of Bringing Witnesses to Trial and Enforceability of the Judgment*

The cost of bringing witnesses to trial weighs in favor of keeping the case in Arizona. The vast majority of presently known witnesses are located in the United States. Indeed, the vast majority of witnesses appear to be either in Arizona or in states directly bordering Arizona. King has identified only three "potential" witnesses living in Canada. As such it seems to the Court that the cost of bringing witnesses to trial weighs in favor of retaining the case in the United States. There is also no issue with the enforceability of the judgement sought. Kings assertion to the contrary rests on a blatant misquotation of Henrietta's complaint. Henrietta does not request a judgement as to who has "title and right of possession," it asks for a judgement that King breached a contractual obligation. The Court is not being called to decide title but to decide whether King must reimburse the equipment's purchase price. Any judgement to that effect is enforceable as long as the Court has personal jurisdiction over the parties.

    3.  <u>Public Interests</u>

In examining the public interests of the relevant forums, the Court considers: (1) the local interest in the lawsuit, (2) the court's familiarity with the governing law,[4] (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum." *Carijano,* 643 F.3d, at 1232 (quoting *Bos. Telecomms.*, 588 F.3d at 1211). The local interest factor has the aim of determining "if the forum *in which the lawsuit was filed* has its own identifiable interest in the litigation" which justifies proceeding in spite of other burdens. *Id*. (citing *Piper*, 454 U.S. at 261); *see also Tuazon*, 433 F.3d at 1182 (the relevant query is "if there is an identifiable local interest in

---

[4] The Court will assume without deciding for the purposes of this motion that Canadian Law applies to the issues of law surrounding contract performance.

- 16 -

the controversy, not whether another forum also has an interest").

*i.      Local Interest*

In regards the local interest analysis, King misunderstands the scope of this factor. The Ninth Circuit has explained that in considering local interests, the Court is only looking to whether Arizona has any interest in the action, "not whether another forum also has an interest." *Tuazon*, 433 F.3d 1182. Thus, to the extent King argues that Canada has a local interest, the argument is inapplicable to the Court's analysis. The Court believes that, in the absence of evidence to the contrary, Arizona does have a local interest in the dispute. The Plaintiff is an Arizona resident and Defendant routinely and continually solicited Plaintiff's business by offering to help them acquire equipment for Plaintiff's operations in that forum. In any event, King fails to address the actual issue of this factor in detail, merely asserting in a single sentence that "there is no Arizona local interest because the equipment was never…brought to Arizona." The Court finds this alone is not sufficient to establish the lack of a local interest. After all, it would be rather anomalous to claim Arizona loses any interest in ensuring its resident's contract is honored simply because a foreign defendant breached the contract and prevented delivery to Arizona. *See Tuazon*, 433 F.3d at 1181.

*ii.     Cost of Resolving the Dispute*

King argues the costs of resolving this dispute are lower in Canada because Canada does not follow the American rule and instead employs a "loser pays" rule. The court notes that simply alleging the costs of litigation will be shifted to another party is not the same as showing litigation will cost less overall. Even were this the case, as Henrietta points out, the parties' contractual agreement has an attorney's fees provision that addresses King's concern. King also asserts the majority of witnesses are local to Canada, but as has been discussed above, Kings evidence on the point is lacking.

*iii.    Administrative Burden and Efficiency*

The remaining factors "all relate to the effects of hearing the case on the respective judicial systems." *Carijano*, 643 F.3d 1233. King argues that this case ought to be tired in

- 17 -

Canada because an Arizona jury will not be able to adequately weigh the local issues such as the true burden of removing snow. Yet, as the Ninth Circuit has previously stated, a "backhanded indictment of the jury system is not compelling. Juries routinely address subjects that are totally foreign to them, ranging from the foreign language of patent disputes to cases involving foreign companies, foreign cultures and foreign languages." *Tuazon*, 433 F.3d at 1181. King has also failed to present any evidence on the relative congestion of Canadian courts compared to this district, and simply asserts in a single sentence that "Local British Columbia juries and judges will be more familiar with local conditions" when discussing the burden on the Court. As such, the Court finds that none of the listed factors weigh in favor of dismissal.

### 4. *Weighing all factors.*

In deciding whether to dismiss a case for *forum non conveniens*, the Court must hold King to its burden of "making a clear showing of facts which establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience." *Carijano*, 643 F.3d 1236. Here King has failed to meet that burden. On one side of the scale sits the presence of some physical evidence in Canada, the assumed application of Canadian law, the presence of three witnesses specifically identified by King along with alleged "minor witnesses." This alone is not sufficient to trigger the "drastic exercise" of what the Ninth Circuit has labeled "an exceptional tool." *Carijano*, 943 F.3d at 1224. This is particularly true given Henrietta's selection of its home forum is entitled to substantial deference in its own right. Other factors also weigh in favor of retaining the case including the fact that both parties and the majority of identified witnesses live in or adjacent to Arizona, and the relative cost of travel to Arizona compared to the cost of travel to British Columbia. Both companies are United States-based with their offices in Arizona and California which supports the inference that evidence of their negotiations and understanding of the contract will be located in the United States. Based on this and other stated factors, the Court finds that the "oppression or vexation" to King is far lower than the convenience of going forward with this dispute between two United States companies in the United States.

**E.  Transfer of Venue under 28 U.S.C. 1404(a)**

King's final argument asserts that "if it is subject to jurisdiction in the U.S.A. for any actions performed for Henrietta Mine…" then "the only proper place" jurisdiction exists is in California. Because of this King requests this Court transfer the case to California under 28 U.S.C. 1404(a). However, aside from a general citation to the statute and an assertion that Arizona lacks personal jurisdiction, King makes no effort to meet their burden of proof for transfer under 1404(a). The Court also notes that the purpose of 28 U.S.C. 1404(a) is not to provide for transfer to a court with personal jurisdiction, but to allow transfer for the convenience of parties and witnesses when the interests of justice require it. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 495-98 (9th Cir. 2000). King undertakes no analysis of why the convenience of the parties, or the interests of justice allow transfer to California. As such the request for transfer under 28 U.S.C. 1404(a) is denied.

**III.  CONCLUSION**

Accordingly,

**IT IS ORDERED** that Defendant's motion to dismiss the case for lack of subject-matter jurisdiction and under the doctrine of *forum non conveniens* **is denied**;

**IT IS FURTHER ORDERED** that Defendant's request to transfer the case to the Eastern District of California under 28 U.S.C. § 1404(a) **is denied**;

**IT IS FURTHER ORDERED** that Defendant is permitted to submit supplemental briefing, not to exceed four pages, on the issue of this Court's personal jurisdiction within five (5) days of the entry of this order and that Plaintiff is permitted to file a response of equal length to the Court within five (5) days after the supplemental briefing is submitted.

Dated this 6th day of January, 2021.

_____
Honorable Susan M. Brnovich
United States District Judge