**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Henrietta Mine LLC, | No. CV-20-01106-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| A.M. King Industries Incorporated, | |
| Defendant. | |

Pending before the Court is Defendant A.M. King Industries Incorporated's ("King") supplemental brief challenging this Court's personal jurisdiction over it in this case. (Doc. 44.) Henrietta Mine LLC ("Henrietta") has filed a response. (Doc. 46.) Having considered the parties briefing and the relevant caselaw, the Court issues the following ruling.[1]

**I.    SUMMARY OF ARGUMENT**

King argues the facts of this litigation show the Court lacks personal jurisdiction over it. King points out that personal jurisdiction must come from an act of the defendant purposefully directed at the foreign forum in which it is being haled to defend itself. (Doc. 44 at 2 (quoting *Asaki Metal Indus. Co. v. Sup. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 112 (1987)).) King further argues that it at no time took any action purposefully directed toward the state of Arizona, and that any contacts it had with the forum are insufficient to create

---

[1] The facts relevant to this Motion are recited in the Court's original order denying A.M. King's motion to dismiss or transfer the case. (Doc. 42.) As such the Court need not restate them here.

jurisdiction. (*Id.*) King also points to the binding precedent of this circuit in support of its argument. For instance, the Ninth Circuit has previously held that merely maintaining a website that is viewable in the forum state will not normally create jurisdiction in that forum. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997), and has also held that "ordinarily use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state." *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985) (internal citation omitted).

With admirable candor, King acknowledges that the invoice-contract constituting their offer was sent to Henrietta in Arizona and that this "might be purposeful availment." (Doc. 44 at 3.) However, King points the Court to several cases in which the Ninth Circuit and the Supreme Court have cautioned against finding that a contract automatically establishes minimum contacts. *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)). King further cites to the cases of *Brand v. Menlove Dodge*, 796 F.2d 1070 (9th Cir. 1986), *TriWest Healthcare All. Corp. v. Geneva Woods Pharmacy LLC*, No. CV-19-02052-PHX-SMB, 2020 U.S. Dist. LEXIS 7457 (D. Ariz. Jan. 15, 2020), and *LNS Enters. LLC v. Cont'l Motors Inc.*, 464 F. Supp. 3d 1065 (D. Ariz. 2020), as analogous to the present case. (Doc. 44 at 3-4.)

Henrietta responds arguing that King is subject to this Court's personal jurisdiction under the three-part test used by the Ninth Circuit. (Doc. 46 at 1 (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).) Henrietta argues the only element of the test disputed in this case is whether King purposefully directed its activities toward Arizona in a manner sufficient to create the minimum contacts required for personal jurisdiction. (Doc. 46 at 2.) Henrietta asserts there is "no genuine dispute that King purposefully—and repeatedly—directed its case-related conduct toward Henrietta and Arizona." (*Id.* at 3.)

As actions constituting purposeful availment, Henrietta lists: (1) King's efforts to solicit business from Henrietta, (2) King's negotiation of a contract with Henrietta, which

it sent to Henrietta for signature in Arizona, (3) King's receipt and retention of Henrietta's money wired from an Arizona bank account, (4) King's in person meetings with Henrietta personnel in Arizona, (5) King's visit to Page, Arizona and attempt to solicit Henrietta's purchase of mining equipment located there, and (6) King's efforts to "create a lasting business relationship with Henrietta" by seeking to engage them in additional transactions for mining equipment. (Doc. 46 at 3-4.)

## II.     STANDARD OF REVIEW

Plaintiff bears the burden of establishing personal jurisdiction.[2] *Ziegler v. Indian River Cty.*, 64 F.3d 470, 473 (9th Cir. 1995). Where the motion is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). In determining whether the plaintiff has met this burden, uncontroverted allegations in the plaintiff's complaint must be taken as true, and "conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (citations and internal quotations omitted). The Due Process Clause requires that a "nonresident generally must have certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice" before they will be required to defend

---

[2] "When no federal statute governs personal jurisdiction, the district court applies the law of the forum state." *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 602 (9th Cir. 2018). Arizona exerts personal jurisdiction to the "maximum extent permitted by the Arizona Constitution and the United States Constitution." Ariz. R. Civ. P. 4.2(a); *see also A. Uberti and C. v. Leonardo*, 892 P.2d 1354, 1358 (Ariz. 1995) (analyzing personal jurisdiction in Arizona under federal law). Therefore, the analyses of personal jurisdiction under Arizona law and federal due process are the same. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004).

themselves in a foreign forum. *Walden*, 571 U.S. at 283. In this circuit, courts "employ a three-part test to assess whether a defendant has sufficient contacts with the forum state to be subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger*, 374 F.3d at 802. If the plaintiff satisfies the first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id*. "A purposeful availment analysis is most often used in suits sounding in contract," while a purposeful direction analysis "is most often used in suits sounding in tort." *Id*.

The mere fact a contract was formed will not establish purposeful availment. Instead, the Court must examine whether the contract creates or contemplates "continuing relationships and obligations" between the defendant and the forum. *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008) (citing *Travelers Health Ass'n v. Commonwealth of Va*, 339 U.S. 643, 647 (1950)). A "'one shot' contact with no future performance envisioned in the forum" will not do. *Senne v. Kan. City Royals Baseball Corp.*, 105 F. Supp. 3d 981, 1024 (N.D. Cal. 2015) (citing *Selhorst v. Alward Fisheries, LLC*, No. C-11-3266 EMC, 2011 U.S. Dist. LEXIS 120810, at *4 (N.D. Cal. Oct. 19, 2011) (quoting *Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir. 1991))). When examining the sufficiency of a Defendant's contacts with the forum, courts must look to "those contacts *leading up to and surrounding the accrual* of the cause of action. Later events are not considered." *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 849 (10th Cir. 2020) (emphasis added)

(quoting 16 Moore's Federal Practice - Civil § 108.42[2][a], at 108-55 to 108-56 (3d ed. 2011)); *see also*, *Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987) ("the fair warning that due process requires arises not at the time of the suit, but when the events that gave rise to the suit occurred."); *Harlow v. Children's Hosp.*, 432 F.3d 5061-62 (1st Cir. 2005).

## III. ANALYSIS

The Court finds that it lacks personal jurisdiction over King in this case. Because the Court has not had an evidentiary hearing on the issue of jurisdiction, Henrietta need only make a prima facie case. *Sher*, 911 F.2d at 136. However, the Court finds Henrietta has failed to do so. Some of the contacts offered as evidence of purposeful availment by Henrietta are irrelevant to the jurisdictional analysis because the contacts came well after the contract for the Endako Mine equipment was formed and relate to King's solicitation of other contracts, not the contract at issue in this case. When the remaining relevant contacts are considered, the Court finds that the facts do not demonstrate King's purposeful availment of the Arizona forum.

### A. Irrelevant Contacts

At the outset it is important for the Court to distinguish some of King's forum contacts offered by Henrietta to show the existence of personal jurisdiction. Henrietta's proffered list of King's contacts includes: the fact that King met with Henrietta personnel in Phoenix to discuss the contract and the parties' business dealings, King's visit to Page, Arizona and attempt to solicit Henrietta's purchase of equipment located there, and King's other efforts to "create a lasting business relationship with Henrietta" by soliciting additional contracts. (Doc. 46 at 2-4.) The Court does not believe these facts lend any significant weight to its personal jurisdiction analysis.

With regard to King's meeting in Phoenix, the Court notes this meeting appears to have taken place after the parties had agreed to the contract for the Endako Mine equipment. (*compare* Doc. 1-1 at 8 (showing Henrietta wired the purchase price in December 2019) *with* Doc. 21-1 at 51-52 (showing the meeting occurred in February

2020).) Therefore, the Court is unable to rely upon this contact with the forum when determining personal jurisdiction. *See Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987) (noting the concerns of due process must be satisfied by the defendant's forum contacts at the time the cause of action arose, not when the suit is filed); *accord XMission*, 955 F.3d at 849. Further, despite Henrietta's assertion that the meeting was about "the Contract[,]" the emails discussing the meeting do not support that assertion. (Doc. 21-1 at 51-52.) Instead, it appears King requested the meeting in order to suggest new contracts for additional equipment they had to offer and to provide some "literature on [Henrietta's] ore." (*Id*.) Because the meeting did not discuss or relate to the Endako Mine contract, it does not appear that the meeting was a contact that Henrietta's claims "ar[ose] out of or relate[d] to." *Picot*, 780 F.3d at 1211.

With regards to King's visit to Page, Arizona, the same issues are present. King's representative visited Page, Arizona around February 17, 2020, after the Endako Mines deal had been already been completed. (Doc. 21-1 at 64.) King's representative told Henrietta it was visiting Page in order to inspect some other mining equipment that it intended to offer Henrietta in a new separate contract. (*Id*.) Thus, the visit to Page does not appear to relate to the sale of equipment or contract which gave rise to Plaintiff's claim in this case, and the visit was not the result of any duty or obligation assumed by King under the contract. This contact appears to be unrelated to the formation or performance of contract at issue in the present case and did not occur "at the time the cause of action arose." *Steel*, 813 F.2d at 1549. Thus, the Court will not consider this instance a forum related contact.

Finally, it does not seem to the Court that Henrietta's evidence of King's efforts to create an alleged "lasting business relationship" should be accorded any great weight it the personal jurisdiction analysis of this case. (Doc. 46 at 3.) The April 9, 2020 communication identified by Henrietta to show King contemplated a "lasting business relationship" appears to be an email by King's representative attempting to resolve the parties' issues after this dispute arose and suit had been filed. (Doc. 21-1 at 49.) First, as the Ninth Circuit

has previously held, when examining personal jurisdiction "the fair warning that due process requires arises not at the time of the suit, but when the events that gave rise to the suit occurred." *Steel*, 813 F.2d at 1549. Second, King's expression of willingness to continue business simply affirms its willingness to potentially negotiate additional separate contracts if Henrietta so desires. (Doc. 21-1 at 49.) But it is well established that a "simple invitation to negotiate" with a forum resident does not generate the type of contact needed for personal jurisdiction. *See Mitchell v. Secretariat of Land & Reclamation*, 1989 U.S. App. LEXIS 23859, at *15 (9th Cir. Oct. 2, 1989) (holding a telex sent to the Plaintiff's American office discussing "[t]he possibility of entering into other agreements" did not create personal jurisdiction over the eventual contract negotiated and executed in Lybia.) Third, the Court is wary of any reliance on the April 9, 2020 communication to establish jurisdiction because it appears to memorialize an effort by King to settle the parties dispute amicably out of Court. It is well established that parties are allowed to engage in the preliminary steps of litigation without waiving their ability to assert the defense of personal jurisdiction. *See e.g.*, *SEC v. Wencke*, 783 F.2d 829, 832-33 n.3 (9th Cir. 1986.) (noting a defendant is no longer required to limit itself to a "special appearance" in order to preserve its defense based on the lack of personal jurisdiction). Further, the Court hesitates to adopt a ruling that would require parties to forgo any settlement efforts out of the fear of sacrificing their procedural defenses. Fed. R. Civ. P 1.

**B. Remaining Contacts**

Having disposed of the above, the Court turns to the remaining contacts alleged by Henrietta: King's other efforts to solicit its business, the place of negotiation and execution of the contract, and King's retention of the funds wired by Henrietta from its Arizona bank.

    **i.    Kings Efforts to Solicit Henrietta's Business**

Henrietta alleges that King made efforts to solicit its business which justifies the Court in finding purposeful availment here. "[I]f the defendant directly solicits business in the forum state, the *resulting transactions* will probably constitute the deliberate transaction of business invoking the benefits of the forum state's laws." *Decker Coal Co.*

*v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir. 1986) (emphasis added). However, in the present case, no solicitation from King to Henrietta led to the negotiation and formation of the transaction at issue in this case. All of King's solicitation efforts identified by Henrietta occurred *after* the parties entered the contract for the Endako Mine equipment. (Doc. 21 at 14-15; Doc. 46 at 2.) The solicitation of additional business in new, separate contracts does not constitute a case-based contact relevant to the Court's personal jurisdiction analysis. *Azzarello v. Navagility, LLC*, No. C-08-2371 MMC, 2008 U.S. Dist. LEXIS 117119, 2008 WL 4614667, at *4 (N.D. Cal. Oct. 16, 2008) ("[I]n a breach of contract case, it is only the 'dealings between the parties in regard to the disputed contract' that are relevant to the minimum contacts analysis.") (citing *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1278 (7th Cir. 1997)). Further, according to the Pfeiffer affidavit submitted by King, the original communication inquiring about the purchase of the Endako Mine equipment was sent by an agent of Henrietta to King in its California office. (Doc. 18-1 at 2.) Since it was Henrietta's agent who reached out to King in its California office, not King who reached into Arizona, the Court does not believe the emails or other communication identified by Henrietta weigh in favor of finding purposeful availment.

### ii. Negotiations Between the Parties

Henrietta claims purposeful avialment can be found through King's negotiations with Henrietta, an Arizona company. Henrietta points out that during the course of the parties' negotiations King sent numerous emails and other materials to Henrietta in Arizona in an effort to secure the ultimate contract for the Endako Mine equipment. (Doc. 46 at 2.) "Relevant considerations generally include how extensive precontract negotiations were, the location of the negotiations, and whether the defendant traveled to the forum state during negotiations." *Thermolife Int'l, Ltd. Liab. Co. v. DNP Int'l, Co.*, No. CV-12-02105-PHX-NVW, 2013 U.S. Dist. LEXIS 201020, at *11 (D. Ariz. Mar. 6, 2013) (citing *J.G. Boswell Tomato Co.-Kern LLC v. Private Label Foods, Inc.*, No. 1:08-CV-00620-OWW-SMS, 2008 U.S. Dist. LEXIS 66103, 2008 WL 3155041, at *6 (E.D. Cal. Aug. 4, 2008)).

In the present case, Henrietta does not allege that King's agents or representatives

physically came to Arizona to conduct negotiations. Instead, it appears that after Henrietta's representative, Dave Taylor, reached out to contact King in California, (Doc. 18-1 at 2), the parties negotiated the contract by phone, mail, and email. (Docs. 1-1 at 5-6; 21 at 14; 46 at 3-4.) The Ninth Circuit has previously held that, when a plaintiff "seeks out" the defendant in another state and purely "deals with them by out-of-state agents or by interstate mail and telephone" it is not *on those grounds* entitled to force the defendant to come to its home forum to defend an action on the contract. *Roth*, 942 F.2d at 621-22 (quoting *Thos. P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica*, 614 F.2d 1247, 1252 (9th Cir. 1980)); *accord Perzow v. Hogeg*, 826 Fed. Appx. 615, 617 (9th Cir. 2020) (citing *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985)); *see also*, *J. G. Boswell Tomato Company - Kern, LLC v. Private Label Foods, Inc.*, No. 1:08-CV-00620-OWW-SMS, 2008 U.S. Dist. LEXIS 66103, at *20 (E.D. Cal. July 31, 2008) ("No representative of [the defendant] has ever traveled to [the forum] in relation to this contract. This factor weighs against a finding of purposeful availment."). Thus, the Court does not find purposeful availment based on King's remote negotiations with a forum resident.

### iii. Execution of The Contract

Plaintiff next argues that King purposefully availed itself of the Arizona forum by sending the contract into that state for Henrietta's signature. While the place a contract is executed can be relevant, the mere fact that a forum resident signed the contract in their home forum will not automatically create the connections necessary for personal jurisdiction. "Even where the contract was negotiated and signed in the forum, there is no purposeful availment if this was but a 'one shot' contact with no future performance envisioned in the forum." *Senne*, 105 F. Supp. 3d at 1024 (citing *Selhorst*, 2011 U.S. Dist. LEXIS 120810, at *4). Courts must recognize that the formal execution of a contract is "but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)).

1 Here, the Court finds that while Henrietta signed the contract in Arizona, the substance of the contract did not create any continuing obligation of the Defendant in Arizona. Under the contract, Henrietta was to take possession of the equipment "as is; where is." (Doc. 1-1 at 13.) Henrietta was supposed to take possession of the equipment where it was located, and King would fulfil its contractual obligations by providing the equipment there. (*Id*.) Thus, it does not appear that King took on any contractual duty to be performed *in Arizona*. The Ninth Circuit reached a similar conclusion in *Gray & Co. v. Firstenberg Machinery Co.*, 913 F.2d 758, 759-61 (9th Cir. 1990). There, the Court examined a contract for the sale of a filter to an Oregon plaintiff by a foreign defendant. *Id*. at 759. The foreign defendant sent the plaintiff "an invoice indicating the filter was sold 'as is, where is'" in Illinois. *Id*. In plaintiff's suit for breach of warranty, the Ninth Circuit held that Oregon had no personal jurisdiction over the Defendant. *Id*. at 761. In reaching this conclusion, the Ninth Circuit stated:

> the fact that a contract was consummated between [the parties] does not establish purposeful availment. The course of negotiations consisted of a few phone calls, which [plaintiff] initiated. There was no formal written contract, only a routine exchange of an invoice and a purchase order. There is no evidence the sale contemplated a continuing relationship between [the parties]. *To the contrary, [defendant's] invoice stated the sale was "as is, where is," indicating [defendant's] desire not to be responsible for the filter after delivery in Illinois.*

*Id*. (emphasis added). The Court finds *Gray & Co.* to be analogous to the present circumstances. King's duty was to provide the mining equipment to Henrietta at the place where it was currently located. King didn't undertake to deliver the equipment to Arizona, nor did the contract contemplate any warranties of fitness for the equipment's use once it was in Arizona. Defendant's duties and obligations under the contract were limited to a "one shot" sale taking place outside of the forum. *Senne*, 105 F. Supp. 3d at 1024.

The fact Plaintiff intended to take the equipment to Arizona after the sale does not change this result. Indeed, the Ninth Circuit in *Gray* specifically rejected such a rational as supporting personal jurisdiction. *Id*. at 761 ("[plaintiff] argues because [defendant] knew

- 10 -

1 [plaintiff] was in Oregon and…would bring the filter to Oregon, [defendant] should have
2 anticipated being sued in Oregon…[but] foreseeability of injury in the forum does not in
3 itself establish purposeful availment."). The *Gray* court instead found the defendants'
4 contacts "f[e]ll in the category of 'attenuated contacts' insufficient in themselves to
5 establish" purposeful availment. *Id*.

6 Given the contract's "as is, where is" clause, the Court finds that King's obligations
7 under the contract were unconnected to the Arizona forum. This contract was a "one shot"
8 sale with King's performance taking place entirely outside of Arizona. Further, the contract
9 was an "as is" sale meaning there were no continuing warranties provided by King which
10 might be triggered once the equipment had entered the forum. In light of this, the Court
11 finds that the contract did not create the sort of continuing obligations that would be
12 considered purposeful availment by King.

### iv. Money Wired from Arizona

14 Henrietta also argues King created a "continuing obligation" between itself and an
15 Arizona resident by "holding Henrietta's money hostage in pursuit of pecuniary gain."
16 (Doc. 46 at 3.) In essence, Henrietta suggests that by refusing to return Henrietta's funds
17 after this dispute arose, King has created a contact with an Arizona resident sufficient to
18 exercise personal jurisdiction over it. The Court is unconvinced. First, the issue of whether
19 Henrietta is *actually owed* the return of its funds is the subject of this litigation, so the Court
20 hesitates to find jurisdiction based on a contact that only truly exists if Henrietta ultimately
21 prevails. Second, the fact that a defendant refuses a plaintiff's eventual demand to rescind
22 a contract can hardly be considered a forum contact known or contemplated by the
23 defendant at the time of contracting. *Steel*, 813 F.2d at 1549. Third, to accept Plaintiff's
24 theory would effectively ensure that a Plaintiff will be able to obtain personal jurisdiction
25 in their home forum in almost any contract dispute. All a plaintiff has to do is send a
26 demand letter and then hold out defendant's allegedly wrongful refusal as creating an
27 obligation to the plaintiff.

28 In light of the analysis above, the Court is of the opinion that the parties' contract

does not create the sort of contacts necessary to find King purposefully availed itself of the Arizona forum. Henrietta's agent is the one who first reached out to California in an attempt to contract, the negotiations of the contract occurred primarily by phone or email, and the contract itself does not require King to perform any act or create any continuing obligations within Arizona. As such the Court lacks personal jurisdiction over King.

### C. Transfer

A court may transfer a civil action to another court in which the action could have been brought to cure a want of jurisdiction if doing so is in the interest of justice. 28 U.S.C. § 1631. Transfer to the Eastern District of California, where King is based, is preferable to dismissal and in the interest of justice. Because King's operations are based out of its offices in Oroville, California, that Court will have general personal jurisdiction over the Defendant.

### IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that this action be transferred to the Eastern District of California pursuant to 28 U.S.C. § 1631 to cure a lack of personal jurisdiction.

Dated this 21st day of April, 2021.

_____
Honorable Susan M. Brnovich
United States District Judge